Plaintiff sues the defendant as the insurance carrier of his former employer, *Page 674 
Consolidated Chemical Industries, Inc., for compensation as for total, permanent disability. According to the allegations of his petition his claim is based upon an accident while he was at work on Monday, April 12, 1943, in which he sustained a hernia on the left side.
He alleges that at the time he sustained the alleged injury, he was lifting an extension ladder and suddenly felt a stinging sensation in his lower abdomen. On the following morning he observed a swelling or protrusion on the left side. He further alleges that he was unable to return to work the next day but on the morning after that he did go back to the place of his employment and reported the accident to his superintendent and was given an order to report to the employer's physician, Dr. C.S. McConnell, which he did. Dr. McConnell ordered him to report to the General Hospital at Baton Rouge on the following Monday morning to be operated on but he did not do so. He still has the hernia which he alleges renders him disabled.
The defendant admits that plaintiff is suffering from a hernia but denies that he sustained it in the manner in which he alleges and also denies that he sustained it while employed by the Consolidated Chemical Industries, Inc. Consequently it denies liability.
After trial of the case in the district court judgment was rendered in favor of the defendant rejecting the plaintiff's demand and dismissing his suit at his costs, whereupon he took the present appeal.
It appears that plaintiff had been operated upon about twenty-two years before for a bilateral hernia. It is not disputed however, that the operation was successful and that he had engaged in hard work during the intervening years.
His counsel admit that plaintiff made a rather poor witness but they stress the fact that the confusion in his testimony was on a matter of dates only. They concede that if the case were to be decided from the standpoint of his ability to remember dates correctly from the time he was injured until the time he testified, naturally his testimony is not impressive and probably the judgment of the lower court would be correct. However they contend that compensation cases are not to be decided strictly according to a witness' testimony concerning dates which he cannot remember exactly and that as in this case, plaintiff has shown a work record which can only lead to the conclusion that he was injured while working for the employer, he should not be penalized for a poor memory on a matter of dates and otherwise he is entitled to recover.
If it were only with regard to dates that plaintiff was confused we would be inclined to agree to a great extent with counsel; but his whole testimony abounds in confusion, conflict and contradiction on so many other vital points that it is impossible for us to give much weight to it.
The most serious discrepancy in the matter of dates is with regard to the day on which the accident itself is said to have occurred, and whilst in cases of this kind we could well agree that if an injured employee would allege a certain date in his petition and in testifying had remembered that it was one or two days before or after the one he had alleged that the accident happened, that should not vitally affect his case. Here however we find that the plaintiff consulted an attorney on the day after he was supposed to have been injured. That attorney, in making demand upon the employer for compensation, in a letter dated April 15, 1943, stated that the accident had taken place on April 9, 1943. The only source from which the attorney could have obtained that information would have been from plaintiff himself and as the accident supposedly had occurred only within a day or so it is hard to understand how such a mistake could have been made with regard to the date in view of the fact that less than three weeks thereafter in his petition which was filed on April 29, 1943, plaintiff alleged that it had happened on April 12, 1943. On being asked to explain the discrepancy, plaintiff, on cross-examination, simply states that he doesn't know on what date he had the accident. It could be that when he was testifying, several months thereafter, he could have forgotten the exact date but when the confusion about it took place, it was really too near the time it had occurred for him not to have remembered it and that is why we think that in this instance, the discrepancy, even though it be in a matter of dates only, is one which affects the weight and credibility of his testimony as a whole.
Another glaring discrepancy which appears in his testimony concerning dates is with regard to a visit he said he had made to the Ardoin Sanitarium at Ville Platte in order to consult a doctor there. He stated that he had gone on the day after he *Page 675 
had reported the accident to his employer, to see Dr. Dupre. The records of the sanitarium reveal that the last time he had been there was during the month of February, 1942, and that at that time, which was several weeks before the alleged accident, he had been treated for a stomach ailment. When confronted with this evidence, he retracted his testimony about having gone there to consult a doctor about his injury and stated that he had gone on that occasion to have a prescription refilled. Although there may be nothing very material concerning the matter of the dates involved in his trips to Ville Platte, the reckless manner in which he refers to them indicates to us a rather definite disregard for the truth.
The most important matter which strikes at the very basis of his testimony, however, is his contradiction in two or three essentials regarding the manner in which the accident happened. It is not alleged in his petition what his work consisted of and why he had to lift an extension ladder on the day that he was hurt. But from his testimony it is brought out that he is an electrician and was so employed by the Consolidated Chemical Industries, Inc. Among his many duties he had to grease the bearing on a large fan and had to use a grease gun in order to do so. This fan was at a certain height from the floor which required the person who greased it either to stand on the concrete foundation on which it rested or else use a step ladder in order to get to the bearing more conveniently. Plaintiff claims that in greasing it he used an extension ladder; that is the ladder which he is supposed to have been handling when he was hurt. At this point it is important to note that in the letter written by the first attorney he had consulted, when demand was made on the employer, it is stated that plaintiff was lifting an extension ladder to replace burned bulbs. Again, we say, the only source from which that attorney could have gotten that information was from the plaintiff himself who evidently had it fresh in his mind at that time. But be that as it may he now insists that it was while he was handling the ladder in order to get to the bearing that he was hurt. In five or six places in his testimony, in relating how he had to hook the ladder into the wire mesh which guarded the fan, he stated that in handling it, it "jobbed" him in the side, or that it "hooked" him in the side, or that it "punched" him in the side or finally that it "kicked" him in the side. Towards the end of the trial, however, when he was again on cross-examination, in talking about the ladder and how the accident occurred, almost spontaneously, he told counsel for defendant that it did not hit him, "I told you I strained my side in untangling it out of the guard." (Emphasis ours.)
Indeed the whole story about the extension ladder is one which seems to be shrouded in considerable doubt. The court convened to the scene of the accident in order to have a demonstration of the manner in which the accident occurred according to plaintiff's version and from what took place at that time, the trial judge was led to believe it was impossible for him to have reached over from the height from which he was on an extension ladder, placed as he said it was, and get down to this bearing in order to grease it. It was shown that a man of plaintiff's height could easily have greased the bearing by standing on the concrete foundation on which the fan rested, or more easily again by using a short step-ladder which was within easy reach of the man who had to attend to this duty. In fact, the use of the step-ladder seems to have been the more prevalent among the other workmen who had this work to do, and why the plaintiff should have found it necessary to walk 450 feet away to the place where the extension ladder was kept, instead of only 50 feet to get the step-ladder, is a matter which is hard to understand. He says that the use of step-ladders for that purpose was forbidden but this is denied by one of the superintendents of the plant and it was shown that they were actually used by other men who greased the bearing on the fan.
There are other contradictions and conflicts in the plaintiff's testimony but those referred to are sufficient, we believe, to warrant the conclusion reached by the trial judge that plaintiff has failed entirely to prove that he was injured in the manner he claims, and it follows that his demand was properly rejected in the lower court.
Judgment affirmed. *Page 676